UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

VINCENT SAN FILIPPO,

       Plaintiff,

   - against -        18-CV-10156 (VSB) (KNF)

ANDREW M. SAUL, COMMISSIONER OF **OPINION & ORDER**
SOCIAL SECURITY ADMINISTRATION,

       Defendant.

-------------------------------------------------------X

```
┌──────────────────────────────────────┐
│ USDC SDNY                             │
│ DOCUMENT                              │
│ ELECTRONICALLY FILED                  │
│ DOC #:                                │
│ DATE FILED:        9/1/2020           │
└──────────────────────────────────────┘
```

VERNON S. BRODERICK, United States District Judge:

 Plaintiff Vincent San Filippo brings this action pursuant to § 205(g) of the Social Security

Act, 42 U.S.C. § 405(g), seeking judicial review of a final determination of the Commissioner of

Social Security (the "Commissioner") denying his application for Disability Insurance Benefits.

(Docs. 5, 11.)[1]  I referred this case to Magistrate Judge Kevin Nathanial Fox on November 5,

2018.  (Doc. 7.)  Both parties moved for judgement on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure; Plaintiff seeking to vacate the Commissioner's final

decision, and Defendant seeking affirmance of its final decision.  (Docs. 15–19.)  On November

20, 2019, Magistrate Judge Fox issued an order instructing the parties to address whether the

presiding Administrative Law Judge ("ALJ") in Plaintiff's Social Security hearing was a

properly appointed official at the time of the hearing in light of the Supreme Court's decision in

*Lucia v. SEC*, —— U.S. ——, 138 S. Ct. 2044 (2018).  (Doc. 20.)  On November 22, 2019 and

November 27, 2019, Plaintiff and Defendant filed their respective supplemental memoranda

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Commissioner of Social Security Andrew M. Saul is substituted as the defendant
in place of Acting Commissioner Nancy A. Berryhill who was initially named as the defendant.

addressing this issue.  (Docs. 21, 22.)  On January 3, 2020, Magistrate Judge Fox issued a Report and Recommendation (the "Report and Recommendation" or "Report"), concluding that vacatur and remand for a new hearing before a properly appointed ALJ was necessary in light of *Lucia*. (Doc. 23.)  Defendant filed a timely objection to the Report on January 16, 2020, arguing that Plaintiff's failure to raise the Appointments Clause issue during the administrative process forfeited such a claim.  (Doc. 25.)  Plaintiff filed a response to Defendant's objection on January 19, 2020, disagreeing and reiterating his argument from his supplemental memorandum that exhaustion of an Appointments Clause issue before the Social Security Administration is not required in order to raise the issue in federal court.  Because I find that Plaintiff's failure to raise and exhaust his Appointments Clause argument at the administrative level does not preclude him from raising such an argument in federal court, I agree with Magistrate Judge Fox's findings and adopt his Report as supplemented herein.

## I.     <u>Legal Standard</u>

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Parties may raise specific, written objections to the report and recommendation within 14 days of being served with a copy of the report.  *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).  When a party submits a timely objection, a district court reviews de novo the parts of the report and recommendation to which the party objected.  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).  When neither party submits an objection to a report and recommendation, or any portion thereof, a district court reviews the report and recommendation for clear error.  *See, e.g.*, *Santana v. Comm'r of Soc. Sec.*, No. 17-CV-2648 (VSB) (BCM), 2019 WL 2326214, at *1 (S.D.N.Y. May 30, 2019); *Marte v. Berryhill*, No. 17-

CV-3567 (VSB) (JLC), 2018 WL 5255170, at *1 (S.D.N.Y. Oct. 22, 2018).

## II.     Discussion

Because the Commissioner timely objected to the Report, I review the Report's findings de novo.  Because "Defendant does not argue that SSA ALJs are employees rather than inferior officers," (Doc. 3. n.2), subject to the Appointments Clause, Defendant's objection rests on whether Plaintiff's failure to exhaust his Appointments Clause argument at the administrative level precludes an Appointments Clause challenge in federal court.  As detailed below, I find that Plaintiff's failure to exhaust this argument at the administrative level does not preclude such a challenge in federal court, and therefore agree with Magistrate Judge Fox's findings in the Report.

### A.     *Relevant Facts*

After his initial application for disability benefits was denied on August 6, 2015, Plaintiff requested a hearing before an ALJ pursuant to 20 C.F.R. § 404.900(a)(3), which was held on September 12, 2017.  (R. 12.)[2]  Plaintiff, represented by counsel, appeared at the hearing and testified.  (*Id.*)  The ALJ considered Plaintiff's disability claim de novo, and on January 31, 2018, found that Plaintiff was not disabled, thus denying Plaintiff's application for disability benefits.  (R. 9–21.)  On February 22, 2018, Plaintiff requested review of the ALJ's decision before the Appeals Council pursuant to 20 C.F.R. § 404.900(a)(4).  (R. 186–88.)  On March 15, 2018, the Appeals Council notified Plaintiff that it had received his request for review, (R. 7–8), and on September 24, 2018, the Appeals Council denied Plaintiff's request, which constituted a final decision on Plaintiff's claim.  (R. 1–6.)  On November 1, 2018, Plaintiff timely filed this complaint seeking review of the ALJ's decision.  (Docs. 1, 5.)  At no point in the administrative

---

[2] "R." refers to the administrative record, filed on February 13, 2019.  (Doc. 11.)

process did Plaintiff ever contend that the ALJ was an inferior officer improperly appointed under the Appointments Clause without authority to decide his claim.

> ### B.    *Relevant Precedent*

The Second Circuit has not yet addressed whether the failure to raise an ALJ Appointments Clause challenge during the SSA administrative process precludes pursuing such a challenge in subsequent judicial proceedings, although with regard to SEC ALJs it recently ruled that "a litigant who does not object to the constitutionality of an ALJ at any point during . . . SEC proceedings forfeits that challenge". *See Gonnella v. United States Sec. & Exch. Comm'n*, 954 F.3d 536, 543–46 (2d Cir. 2020).

The Third Circuit Court of Appeals has held that a plaintiff need not exhaust an Appointments Clause objection in front of the SSA. *See Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020).[3]  In contrast, the Tenth Circuit Court of Appeals recently held that "Social Security disability claimants waive Appointments Clause challenges that they failed to raise in their administrative proceedings," *Carr v. Commissioner, SSA*, ——F.3d——, 2020 WL 3167896 (10th Cir. June 15, 2020), as has the Eighth Circuit, *see Davis v. Saul*, 963 F.3d 790, 791 (8th Cir. 2020), *cert. docketed*, No. 20-105 (July 31, 2020).  Appeals addressing the application of *Lucia* to SSA ALJs are currently pending in the Fourth and Eleventh Circuits, but have not yet been decided. *See Tallon v. Saul*, No. 7:19-CV-120-FL, 2020 WL 1983871, at *3 (E.D.N.C. Apr. 27, 2020), *appeal filed*, No. 20-1616 (4th Cir. June 2, 2020); *Gagliardi v. Soc.*

---

[3] At least three district courts in this Circuit have adopted the Third Circuit's reasoning. *See Blauvelt v. Saul*, No. 3:19-CV-01446 (KAD), 2020 WL 4432911, at *7 (D. Conn. July 31, 2020); *Jenny R. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1451 (DEP), 2020 WL 1282482, at *5 (N.D.N.Y. Mar. 11, 2020); *Suarez v. Saul*, No. 3:19-CV-173 (JAM), 2020 WL 913809, at *3 (D. Conn. Feb. 26, 2020); *but see Karen S. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00099, 2020 WL 4670911, at *8 (D. Vt. Aug. 11, 2020).  Many other district court opinions outside of this Circuit have held that claimants must exhaust Appointments Clause challenges in front of the SSA. *See Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 349-50 (S.D.N.Y. 2019) (collecting cases).

*Sec. Admin.*, No. 18-CV-62106, 2020 WL 966595 (S.D. Fla. Feb. 28, 2020), *appeal filed*, No.

20-10858 (11th Cir. Mar. 2, 2020).

      **C.**    ***SSA Statute and Regulations***

      *Sims v. Apfel*, which held that claimants need not exhaust issues in front of the Social

Security Administration Appeals Council, stated that the "requirements of administrative issue

exhaustion are largely creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107 (2000). "Similarly,

it is common for an agency's regulations to require issue exhaustion . . . ." *Id.* Accordingly, I

begin by assessing Defendant's argument that certain SSA regulations specify an issue

exhaustion requirement regarding Appointments Clause objections. (*See* Doc. 25, at 9 (quoting

20 C.F.R. § 404.933(a)(2) (in request for hearing before an SSA ALJ, claimant must set forth in

writing "[t]he reasons [the claimant] disagree[s] with [SSA's] previous determination or

decisions"); 20 C.F.R. § 404.939 (claimant must notify ALJ "at the earliest possible opportunity"

regarding concerns about "the issues to be decided at the hearing"); 20 C.F.R. § 404.940

("object[ion] to the [ALJ] who will conduct the hearing" must be raised at the "earliest

opportunity"); 20 C.F.R. § 404.946(b) (ALJ authorized to consider new issues identified before

notice of hearing decision is mailed).").); *see also Davis*, 963 F.3d at 793 ("The agency's

regulations [] require a claimant to notify an ALJ before the hearing if the claimant objects to the

issues to be decided.  20 C.F.R. § 404.939."); *Carr*, 2020 WL 3167896, at *7 (stating "SSA

ALJs must notify claimants of the 'specific issues to be decided' at each hearing, 20 C.F.R. §

404.938(b)(1), and claimants must 'notify the [ALJs] in writing at the earliest possible

opportunity' if they 'object to the issues to be decided at the hearing,' *id*. § 404.939," and "a

claimant must object to an ALJ's authority.  *See, e.g*., 20 C.F.R. § 404.940 (explaining that a

claimant who believes an ALJ is prejudiced 'must notify the [ALJ of the objection] at [the]

earliest opportunity')")).

The most applicable of the regulations cited by Defendant, 20 C.F.R. § 404.940, deals with the recusal of an ALJ "if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. However, this recusal provision is not a regulation that requires claimants to exhaust a constitutional Appointments Clause challenge at the ALJ level. Contrary to the Tenth Circuit's comment in *Carr*, this provision deals not with an ALJ's "authority," 2020 WL 3167896, at *7, to hear a case, but serves to protect claimants from an ALJ's "bias," *see Bolognese v. Sebelius*, 339 F. App'x 40, 41 (2d Cir. 2009) (summary order) (referring to 20 C.F.R. § 404.940 claims as "[b]ias claims"). Moreover, the relevant Social Security Ruling on the effect of *Lucia* states that the SSA "interpret[s] [] challenges to the ALJ's authority to hear and decide a claim . . . as raising 'a broad policy or procedural issue that may affect the general public interest' within the meaning of 20 C.F.R. § 404.970(a)(5)," and that "[c]hallenges to an ALJ's authority to decide a claim may raise a broadly applicable procedural issue independent of the merits of the individual claim for benefits—that is, whether the ALJ who presided over the claimant's hearing was properly appointed under the Appointments Clause of the Constitution." *SSR 19-1p: Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council*, 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019). Although claimants must "notify the [ALJs] in writing at the earliest possible opportunity" if they "object to the issues to be decided at the hearing," 20 C.F.R. § 404.939, and can raise new issues at the hearing, *see id.* § 404.946(b), Defendant has not identified an SSA regulation requiring claimants to present, or even giving claimants the opportunity to present, "broad policy or procedural issues" during an ALJ hearing. It is no surprise then, that in front of the Third and Tenth Circuits, "[t]he

Commissioner concede[d] that there is no statutory or regulatory exhaustion requirement that governs SSA proceedings." *Cirko*, 948 F.3d at 153; *see also Carr*, 2020 WL 3167896, at *3 ("The Commissioner does not argue that a statute or regulation requires issue exhaustion in the SSA context."). Accordingly, I reject Defendant's arguments that SSA regulations prescribe an exhaustion requirement. *See Blauvelt*, 2020 WL 4432911, at *3 ("Nowhere . . . do [SSA regulations] specify that an issue is forfeited for purposes of judicial review if it is not raised before or during the claimant's hearing. As the Supreme Court acknowledged twenty years ago, the 'SSA regulations do not require issue exhaustion.' *Sims*, 530 U.S. at 108. '[A]nd in the 20 years since the Sims decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion.' *Suarez*, 2020 WL 913809, at *4. Nor has Congress enacted an exhaustion provision.").

### D.   *Judicially Imposed Issue Exhaustion*

The Supreme Court has "imposed an issue-exhaustion requirement even in the absence of a statute or regulation." *Sims*, 530 U.S. at 108–09. "The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* Additionally, "courts require administrative issue exhaustion as a general rule because it is usually appropriate under an agency's practice for contestants in an adversary proceeding before it to develop fully all issues there." *Id.* (internal quotations omitted); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts."). Constitutional objections such as Appointments Clause challenges are not exempt from these justifications. *See Gonnella*, 954 F.3d at 543 (citing

*Freytag v. Comm'r*, 501 U.S. 868, 893 (1991) (Scalia, J., concurring in part and concurring in the judgment) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review.")).  However, as *Sims* counseled:

> the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding.  Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest. . . .  Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker.

*Id.* at 109–10;[4] *see also Smith v. Berryhill*, 139 S. Ct. 1765, 1776 (2019) ("[T]he doctrine of administrative exhaustion should be applied with a regard for the particular administrative scheme at issue." (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).  Where a plaintiff's claim involves "'one of those rare cases' . . . that merits excusing forfeiture," the court will not impose an issue exhaustion requirement to an Appointments Clause challenge.  *Gonnella*, 954 F.3d at 546 (quoting *Freytag*, 501 U.S. at 879).

There is no debate, and the parties do not dispute, that SSA proceedings are fundamentally non-adversarial.  In fact, SSA regulations make clear that "[i]n making a determination or decision in [a claimant's] case, [the SSA] conduct[s] the administrative review process in an informal, non-adversarial manner."  20 C.F.R. § 404.900.  Accordingly, "[i]t is the rule in [this] circuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of HHS*, 685 F.2d 751, 755

---

[4] Five Justices joined this section of Justice Thomas's analysis in *Sims*.  Although Justice O'Connor's concurrence constitutes the "holding of the Court," *see Marks v. United States*, 430 U.S. 188, 193 (1977), Justice O'Connor also joined this portion of Justice Thomas's analysis.  Justice O'Connor separately noted that while "[i]n most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court[,] . . . [i]n the absence of a specific statute or regulation requiring issue exhaustion, . . . such a rule is not always appropriate."  *Sims*, at 112–13 (O'Connor, J., concurring in part and concurring in the judgment).

(2d Cir. 1982)); *see also Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (summary

order) (same).  Thus, "the reasons for a court to require issue exhaustion are much weaker" in the

SSA context.  *Sims*, 530 U.S. at 109–10; *see also Cirko*, 948 F.3d at 156 ("While exhaustion may

be broadly required in an agency where 'it is usually 'appropriate under [the agency's] practice'

for 'contestants in an adversary proceeding' before it to develop fully all issues there,' *Sims*, 530

U.S. at 109 (alteration in original) (quoting *L.A. Tucker Truck Lines, Inc*., 344 U.S. at 36–37), the

SSA's inquisitorial system does not fit that description.").

Nor do the traditional procedural justifications for issue exhaustion suitably apply to

Appointments Clause challenges to SSA ALJs.  As the Tenth Circuit stated, "[t]he exhaustion

requirement . . . furthers two main institutional interests."  *Carr*, 2020 WL 3167896, at *4.

"First, it allows agencies 'to correct [their] own mistakes," and "[s]econd, it 'promotes

efficiency' by expediting claims, limiting the number of cases that reach federal courts, and

conserving resources."  *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)); *see also Davis*,

963 F.3d at 793–94.  Relying on these justifications, the Tenth Circuit first concluded that "had

[the claimants] exhausted their Appointments Clause claims, the SSA could have corrected an

appointment error."  *Carr*, 2020 WL 3167896, at *5.  *Carr* further concluded that "an exhaustion

requirement here would have promoted both judicial and agency efficiency" by reducing the

time and expense of litigation and avoiding the need for two ALJ hearings.  *Id.* at *6.  The Eighth

Circuit adopted similar reasoning by stating that "[e]ven if an individual ALJ was powerless to

address the constitutionality of her appointment, the agency head—alerted to the issue by

claimants in the adjudicatory process—could have taken steps through ratification or new

appointments to address the objection."  *Davis*, 963 F.3d at 794–95.  *Davis* was also motivated

by "the practicalities of potentially upsetting numerous administrative decisions because of an

alleged appointment flaw to which the agency was not timely alerted." *Id*. at 795.  However, I
find the Tenth and Eighth Circuits' discussions of these factors to be unpersuasive in this case.

The SSA's own actions during the *Lucia* appeal and in the wake of the *Lucia* decision
undermine the Tenth and Eighth Circuits' reasoning.  For example, on January 30, 2018, while
*Lucia* remained pending and just one day before Plaintiff's ALJ hearing decision was issued, the
SSA released Emergency Message EM-18003, directing "[ALJs] to acknowledge Appointments
Clause arguments raised in connection with the appeal of an administrative action without
discussing or making any findings on any such arguments." *See Soc. Sec. Admin.*, *EM-18003:
Important Information Regarding Possible Challenges to the Appointment of Administrative Law
Judges in SSA's Administrative Process* (effective Jan. 30, 2018).  In fact, the guidance explicitly
stated that SSA ALJs "do not have the authority to rule on" Appointments Clause challenges,
and further stated that "[a]s challenges of the constitutionality of the appointment of SSA's ALJs
are outside the purview of the administrative adjudication," even "the [Appeals Council] will not
acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue"
during a challenge made at the Appeals Council level.  *Id.*  The agency's updated guidance dated
June 25, 2018 similarly stated that both SSA ALJs and the Appeals Council lacked authority to
consider Appointments Clause challenges, and would not discuss or make findings regarding
such challenges.  *See Soc. Sec. Admin.*, *EM-18003 REV: Important Information Regarding
Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative
Process—UPDATE* (effective June 25, 2018).

Given the SSA's guidance, and the maxim that constitutional claims, including
Appointments Clause challenges, are "outside the [agency's] competence and expertise," *Free
Enter. Fund v. Pub. Co. Accounting Oversight Bd*., 561 U.S. 477, 491 (2010), I do not find that

Plaintiff's exhaustion of his Appointments Clause objection at the ALJ level would have presented the agency with an opportunity to correct the constitutional error in this case, or furthered judicial or agency efficiency. *See Cirko*, 948 F.3d at 158 ("At neither the trial nor the appellate levels could the SSA's administrative judges cure the constitutionality of their own appointments, whether by reappointing themselves, *see Lucia*, 138 S. Ct. at 2051 (explaining that 'the President, a court of law, or a head of department' must appoint ALJs), or by transferring the case to a constitutionally appointed ALJ, see Appellant's Br. 6 (conceding that all SSA ALJs were unconstitutionally appointed prior to *Lucia*)."); *see also Santos-Buch v. Fin. Indus. Regulatory Auth., Inc*., 591 F. App'x 32, 33 (2d Cir. 2015) (summary order) ("Exhaustion is not required, however, when an agency lacks the power to grant effective relief, including when the agency would be called upon to resolve a substantial constitutional issue. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).").[5]  "[E]ven if the Court were to determine that exhaustion . . . would ordinarily be required, the Court would waive it on the basis of futility" under the circumstances, for the agency "was not ruling on Appointments Clause challenges per the SSA's own guidance [but] was fully aware of the constitutional problem."  *Blauvelt*, 2020 WL 4432911, at *7.  This is exactly the situation presented here; therefore, I would waive an

---

[5] The Second Circuit's *Gonnella* decision noted that "a pessimistic view of the [SEC's] likelihood of granting [an Appointments Clause] motion is not enough to overcome the traditional rule mandating litigants to lodge their objections during the administrative proceedings."  *Gonnella*, 824 F.3d at 545.  In so stating, *Gonnella* relied on *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016), where the Second Circuit "held that, '[b]y enacting the SEC's comprehensive scheme of administrative and judicial review, Congress implicitly precluded federal district court jurisdiction over [an] appellant['s] constitutional [Appointments Clause] challenge' prior to review by an ALJ and the [SEC]."  *Gonnella*, 824 F.3d at 545–46 (quoting *Tilton*, 824 F.3d at 279).  *Tilton* emphasized that "appellants will have access to meaningful judicial review of their Appointments Clause claim through administrative channels."  *Tilton*, 824 F.3d at 286.  However, in this case, the SSA itself made it clear that it was not "in a position to provide meaningful review" of Plaintiff's Appointments Clause claim.  *Gonnella*, 824 F.3d at 546.  I therefore do not find the reasoning in *Gonnella* to be applicable.  Furthermore, in contrast to SSA ALJs—who perform non-adversarial, inquisitorial functions—the SEC ALJs at issue in *Gonnella* oversaw fundamentally "adversarial proceedings," with "authority comparable to that of a federal district judge conducting a bench trial."  *Lucia*, 138 S. Ct. at 2049.  As discussed in Section II.D., this difference matters when justifying a judicially-imposed exhaustion requirement.

exhaustion requirement on the facts before me.

On July 16, 2018, in response to *Lucia*, the SSA's Acting Commissioner "ratified the appointments of [its] ALJs" in accordance with constitutional requirements.  *See Soc. Sec. Admin.*, *EM-18003 REV 2: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE* (effective Aug. 6, 2018).  Then, on August 6, 2018, the SSA issued further revised guidance, which instructed the Appeals Council to evaluate Appointments Clause challenges timely raised in requests for review, including those predating the Acting Commissioner's ratification.  *Id.*  However, by this time, Plaintiff had already received a letter from the Appeals Council dated March 15, 2018, stating that he had twenty-five days to update the Appeals Council with additional information, which could not be extended "except for very good reasons."  (R. 7–8.)  In addition, as *Sims* unambiguously held, claimants need not "exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."  *Sims*, 530 U.S. at 112 (2000).[6]  Thus, although Plaintiff could have attempted to raise the Appointments Clause issue in the wake of the SSA's August 6, 2018 guidance—in defiance of the twenty-five day deadline established by the Appeals Council in its letter—he was not so required, and his failure to do so does not affect my conclusion that a judicially imposed issue exhaustion requirement is inappropriate given the facts of this case.

---

[6] To be sure, "[w]hether a claimant must exhaust issues before the ALJ" was not the question before the Supreme Court in *Sims*.  *Sims*, 530 U.S. at 107.  However, "it would be anomalous to conclude that a claimant must exhaust all issues before the ALJ despite not having to do so before the Appeals Council" in order to comply with a judicially imposed exhaustion requirement.  *Suarez*, 2020 WL 913809, at *3.  This is especially true where, as here, SSA guidance at the time of the ALJ's decision on Plaintiff's claim directed ALJs to "acknowledge Appointments Clause arguments raised in connection with the appeal of an administrative action without discussing or making any findings on any such arguments."  *See Soc. Sec. Admin.*, *EM-18003: Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process* (effective Jan. 30, 2018).

### III.    <u>**Conclusion**</u>

For the foregoing reasons, I ADOPT the Report as supplemented herein, and REMAND this case for a new hearing before a properly appointed ALJ.  The Clerk's Office is respectfully directed to terminate any open motions, and is further directed to close the case.

SO ORDERED.

Dated: September 1, 2020
        New York, New York

Vernon S. Broderick
United States District Judge